**HARTNESS, et al., Plaintiffs,**

v.

**BUSH, et al., Defendants.**

**Civ. A. No. 89–0044–LFO.**

United States District Court,
District of Columbia.

Jan. 26, 1990.

Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Brook Hedge, Mary E. Goetten, Patrick Sorek, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants; Robert W. Kelly, Gen. Counsel, Bruce L. Overton, Asst. Gen. Counsel, Office of Admin., Executive Office of the President, of counsel.

Jeffrey F. Liss, Benjamin S. Boyd, Piper & Marbury, Arthur B. Spitzer, Elizabeth Symonds, American Civil Liberties Union Fund of the National Capital Area, Washington, D.C., for plaintiffs.

## ORDER

OBERDORFER, District Judge.

In this action, 30 employees of three government agencies challenge the mandatory, random urinalysis drug testing program enacted by the Executive Office of the President ("EOP"). The three agencies involved are the Office of Management and Budget, the Office of Administration, and the Office of the United States Trade Representative. All plaintiffs hold positions designated as "sensitive" by the EOP Plan and are subject to random testing of their urine. Of the 30 plaintiffs, 19 have top secret security clearances, 10 have secret security clearances, and 1 has no security clearance.

On May 19, 1989, a preliminary injunction was entered in this matter barring defendants from conducting the proposed random testing of those plaintiffs who do not hold a White House pass. 712 F.Supp. 986. Both plaintiffs and defendants now move for summary judgment. In addition, defendants move to stay discovery or for a protective order barring discovery.

In *Harmon v. Thornburgh*, 878 F.2d 484 (D.C.Cir.1989), decided after the entry of the preliminary injunction in this matter, the District of Columbia Court of Appeals held that employees holding top secret national security clearances may be subjected to random urinalysis drug testing. The Court of Appeals applied the Supreme Court's ruling in *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), which stated that the government has a compelling interest in protecting "truly sensitive" information, and therefore may require those with access to such information to submit to drug testing. 109 S.Ct. at 1396, 1397. According to the Court of Appeals, "[w]hatever 'truly sensitive' information includes, we agree that it encompasses top secret national security information." 878 F.2d at 491. On the basis of *Harmon*, it is unlikely that the plaintiffs who hold top secret security clearances will ultimately prevail on the merits.

The permissibility of subjecting plaintiffs who do not hold top secret security clearances to random mandatory urinalysis is less clear. In *Harmon*, the Court of Appeals specifically stated that

> [w]hatever the precise contours of "truly sensitive" information intended by the *Von Raab* Court, we believe that the term cannot include *all* information which is confidential or closed to public view. A very wide range of government employees—including clerks, typists, or messengers—will potentially have access to information of this sort.

878 F.2d at 492. In order to determine the permissibility of testing those without top secret clearances, the balancing test set out in *Von Raab* must be applied. Under that test, "it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." 109 S.Ct. at 1390. Where the government interest at issue is that of protecting sensitive material, the Supreme Court has stated that "the criteria used by the [government] in determining what materials are classified and in

deciding whom to test under this rubric" must be considered. *Id.* at 1397.

The government contends, in effect, that information classified as "secret" is by definition as "truly sensitive" as top secret information so that employees who hold "secret" security clearances must be subjected to urine testing for drugs at the discretion of the employing government agency. In support of this contention, the government relies upon *American Federation of Government Employees v. Skinner*, 885 F.2d 884 (D.C.Cir.1989). In that case, our Court of Appeals approved the testing of urine of Department of Transportation van drivers who, operating without the close supervision of an office environment, transported classified documents by motor vehicle. The Court of Appeals, however, did not rest its approval of this drivers' testing program solely upon the fact that the drivers held secret security clearances. Rather, it relied heavily upon, among other things, traffic safety concerns authoritatively addressed in *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), as well as the drivers' "regular access to classified information" in an unsupervised environment. 885 F.2d at 893. It is not at all clear in the present state of the controlling decisions that the government may test the urine of all employees solely because they possess secret security clearances irrespective of the circumstances (e.g., their actual access to documents classified as "secret," the general subject matter of the information, and the feasibility of reliance on individualized suspicion to detect drug abuse in the employee's working environment). In fact, on this record, the government is not likely to prevail on what is apparently the essence of its rationale: that a government agency may, in its discretion, test the urine of any employee who possesses a secret security clearance.

The efficient resolution of this original question and efficient review of any decision will be facilitated by further discovery in order to create a reviewable record regarding the criteria the government relied upon to select positions to be tested (including positions with top secret clearances)

and whether application of those factors to the particular persons to be tested was reasonable. Accordingly, it is this 26th day of January, 1990, hereby

ORDERED: that defendants' motion to vacate the preliminary injunction should be, and is hereby, granted in part; and it is further

ORDERED: that the preliminary injunction entered in this matter on May 19, 1989, is modified to permit testing of named plaintiffs who have been cleared for access to top secret information; and it is further

ORDERED: that defendants' motion to stay discovery or for a protective order, should be, and is hereby, denied; and it is further

ORDERED: that discovery with regard to the validity of defendants' procedures, rationale, and conclusions concerning designation of positions as Testing Designated Positions because of possession of a Secret or Top Secret security clearance may be conducted until April 26, 1990; and it is further

ORDERED: that this matter shall be referred to Magistrate Attridge for supervision of discovery and resolution of any discovery disputes; and it is further

ORDERED: that supplemental motions for summary judgment shall be filed on or before May 28, 1990.